COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

LINDA FRISS ALTAMIRANO,                          )

                                                                              )               No.  08-01-00235-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )                
70th District Court

THE STATE OF TEXAS,                                     )

                                                                              )             
of Ector County, Texas

Appellee.                           )

                                                                              )                   (TC# A-28,353)

                                                                              )

 

 

O
P I N I O N

 

Linda Friss Altamirano appeals her
conviction for the offense of aggravated kidnapping.  A jury found Appellant guilty and sentenced
her to 10 years=
imprisonment in the Institutional Division of the Texas Department of Criminal
Justice.  Appellant brings five issues
for review, four of which concern the trial court=s
evidentiary rulings and one which concerns the trial court=s refusal to submit the lesser-included
offenses of kidnapping, aggravated assault, and unlawful restraint.  Finding no reversible error, we affirm.








In April 1999,
Appellant and a female companion drove to the Estate Lounge, a bar that the
Appellant had leased to Carol Babjeck, the
complainant.  According to Ms. Babjeck=s
testimony, she was working in the bar when Appellant=s
companion came in and asked her to go outside because the Appellant had
something to show her.  Ms. Babjeck got into the backseat of Appellant=s vehicle.  With Appellant driving, the three left the
bar and traveled down the highway and then on to country roads.  Ms. Babjeck did not
know where she was going and expressed her concern and worry about leaving her
work, but Appellant and her companion continued to tell Ms. Babjeck
that they had something she just had to see. 
Both the Appellant and Ms. Babjeck testified
that all three of them were drinking beer when they left the bar premises.

At some point,
they reached a ranch cattle guard on a country road.  Ms. Babjeck
testified that Appellant then stopped the vehicle.  Appellant=s
companion handed Ms. Babjeck a newspaper article
about a decomposed body that had been found on an isolated ranch.  Confused, Ms. Babjeck
told Appellant that she did not know the man in the news story.  When Ms. Babjeck
looked up, she saw that Appellant was pointing a gun at her.  Appellant told Ms. Babjeck
that Ashe was
fixing to meet him.@  In her testimony, Ms. Babjeck
alleged that the Appellant then accused her of selling and using drugs in the
Estate Lounge Bar and began hitting her. 
Appellant drove further down the road, stopped the vehicle at an oil pumpjack station on ranch property, and exited the
vehicle.  Appellant then opened the back
door and pulled Ms. Babjeck out of the vehicle.  Appellant and her companion began hitting and
kicking Ms. Babjeck who was knocked down on the
ground.  Ms. Babjeck
alleged that Appellant and the companion used twine to tie her hands behind her
back and tie her ankles together. 
Appellant and the companion then proceeded to kick, punch, and slap her
intermittently for approximately two to three hours between breaks and
drinking.  Ms. Babjeck
also alleged that Appellant and the companion smeared cow manure, which was
lying nearby, onto her clothes and her face during the incident.








At some point,
Appellant and her companion were interrupted by a pickup truck coming down the
road towards them.  According to Ms. Babjeck and the pickup truck driver, who was the owner of
the ranch property, Appellant and her companion picked Ms. Babjeck
off the ground and put her into the backseat of the Appellant=s vehicle, with one holding her by the
shoulders and the other holding her by the ankles.  When they dropped Ms. Babjeck,
the witness saw that Ms. Babjeck=s feet were tied up.  The witness testified that he saw  Ms. Babjeck struggling, kicking, and hollering Aplease help me.@  The witness called 911 emergency
and followed the Appellant=s
vehicle as it drove off his property towards the main highway.  During the drive, Ms. Babjeck
managed to untie her hands.  When the
Appellant stopped at a crossing, Ms. Babjeck jumped
out of the vehicle and started hopping down the road towards the pickup truck
and again the witness heard her say Aplease
help me.@  The witness then saw the Appellant get out of
the driver=s side of
the vehicle and try to grab Ms. Babjeck and pull her
back towards the vehicle.  At this point,
a police car arrived.  Appellant stopped
what she had been doing and returned to her vehicle.








At trial,
Appellant testified in her own defense. 
According to her, Ms Bajeck called Appellant earlier
in the day and asked her to make up an excuse in order to get out of work.  They went out driving, drank beer, and
listened to music.  Appellant had a rule
against using or selling drugs at the bar and confronted Ms. Babjeck with her suspicions that Ms. Babjeck
had broken this rule.  When Ms. Babjeck denied using and selling drugs, Appellant Abackhanded@
her.  There was a scuffle in the vehicle,
which continued on and off again while they were outside at the pumpjack station. 
Appellant testified that there was intermittent fighting and drinking
amongst the three of them, which continued for approximately twenty
minutes.  According to the Appellant, the
fight was about Ms. Babjeck lying about using drugs
and then admitting to it.  Appellant
denied tying up Ms. Babjeck and stated that she did
not notice that Ms. Babjeck was tied up.  Appellant also could not recall whether Ms. Babjeck was tied up when she and her companion put Ms. Babjeck into her vehicle. 
Appellant testified that she was intoxicated and could not remember the
details of what occurred after Ms. Babjeck jumped out
of the vehicle.

Motion
for Additional Discovery

In her first
issue, Appellant asserts that the trial court erred in denying her motion for
additional discovery.  In a pretrial
hearing, Appellant argued that the State had failed to produce a list which
allegedly contained the names of ten to fifteen people who claimed to have
bought drugs from Ms. Babjeck in the Estate Lounge
Bar.  Appellant learned of this list from
a former District Attorney investigator who prepared it with the assistance of
an informant sometime in 2000.  Appellant
argued that the list was exculpatory because it contained impeachment material.  The District Attorney provided an affidavit,
stating that he was made aware that such a list had existed, but did not
remember seeing it.  Further, he stated
that his staff had searched for this list, but had not found it.  Appellant requested an order from the trial
judge to require the State to replicate or otherwise duplicate the list.  The trial judge denied the motion, stating
that he would probably find that the information on the list was inadmissible
evidence on the basis that it was irrelevant and pertained to collateral
matters.  On appeal, Appellant argues
that the trial court erred in refusing to require the State to duplicate the
witness list, thereby violating the Appellant=s
Fourteenth Amendment right to due process because the list was permissible
impeachment evidence.













The Due Process
clause of the Fourteenth Amendment guarantees that a defendant in a criminal
prosecution is afforded a trial that comports with fundamental fairness.  See California v. Trombetta,
467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984). 
This has been interpreted to mean that a defendant has a right to
present a complete defense, and in order to do so, a defendant must have full access
to exculpatory evidence.  See id.
at 485, 104 S.Ct. at 2532.
Evidence is exculpatory if it tends to excuse or clear the defendant from the
alleged fault or guilt.  Thomas v. State, 841 S.W.2d 399, 404 (Tex.Crim.App.
1992).  A prosecutor is under an affirmative
duty to disclose exculpatory evidence that is material to the defendant=s guilt or punishment.  Brady v. Maryland,
373 U.S. 83, 86, 83 S.Ct. 1194, 10 L.Ed.2d 215
(1963).  A due process violation
occurs if:  (1) the prosecutor fails to
disclose evidence; (2) the evidence is favorable to the defendant; and (3) the
evidence is material to the accused=s
defense.  See id. at 87, 83 S.Ct. at 1196-97; Little
v. State, 991 S.W.2d 864, 866 (Tex.Crim.App.
1999).  Exculpatory evidence is material
if there is a reasonable probability that its disclosure would have led to a
different outcome in the proceeding.  See
McFarland v. State, 928 S.W.2d 482, 511 (Tex.Crim.App.
1996), cert. denied, 519 U.S. 1119, 117 S.Ct.
966, 136 L.Ed.2d 851 (1997).  A
reasonable probability is a probability that is sufficient to undermine
confidence in the outcome of the trial.  McFarland, 928 S.W.2d at 511; U.S. v Bagley, 473 U.S.
667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481
(1985).  Favorable evidence is Amaterial@
if there is a reasonable probability that had the evidence been disclosed to
the defendant, the result of the proceeding would have been different.  Little, 991 S.W.2d
at 866.  Exculpatory evidence
includes impeachment evidence.  Bagley,
473 U.S. at 676, 105 S.Ct. at 3380.  The right to cross-examination,
thus includes the right to impeach a State=s
witness with relevant evidence affecting her credibility, bias, or interest in
the prosecution.  See Virts v. State, 739 S.W.2d
25, 29 (Tex.Crim.App. 1987).  The trial judge, however, retains broad
discretion to impose reasonable limits on cross-examination based upon certain
concerns, inter alia witness harassment,
prejudice, and confusion of the issues.  See
Virts, 739 S.W.2d at 28.

In the present
case, Appellant argues that the list contained exculpatory evidence that would
have impeached Ms. Babjeck=s
testimony with respect to her denial of selling drugs in the Estate Lounge
Bar.  Appellant also asserts that this
evidence is not collateral because according to Appellant=s testimony, Ms. Babjeck=s drug activities were the cause of
their alleged fight.  At trial on
cross-examination, Ms. Babjeck admitted to using
marijuana and cocaine regularly around the time of the incident and to using
and sharing drugs with others at Appellant=s
bar.  Appellant has failed to show that
the testimony of potential witnesses from the list would be material or
favorable to the defense.  Additional
evidence of Ms. Babjeck=s
drug activities in the bar was not material such as to establish a reasonable
probability that its disclosure would have led to a different outcome in the
proceeding.  A mere possibility that the evidence
would have exculpated the accused is not sufficient to meet the requirement of
materiality.  Lee v.
State, 893 S.W.2d 80, 87 (Tex.App.--El Paso 1994,
no pet.).  We agree with the trial
court=s
determination that the list and its contents would have constituted impeachment
on a collateral matter.  Thus, the list
is not exculpatory evidence because Appellant has failed to show that its
contents would be relevant, material, or favorable to the defense.  There was no violation of Appellant=s due process right when the State
failed to disclose or duplicate the potential witness list.  Even if exculpatory, Appellant failed to show
bad faith in the State=s
failure to preserve the list allegedly in its possession.  See Lee, 893 S.W.2d at 86.  The trial court did not err in denying
Appellant=s
motion.  Accordingly, we overrule Issue
One.








Impeachment
of State=s Witness
on Cross-Examination

In her third
issue, Appellant asserts the trial court erred in limiting cross-examination of
Ms. Babjeck with respect to the extent of her alleged
injuries.  Specifically, Appellant
contends that the trial court denied her the right to
confrontation when it restricted cross-examination of Ms. Babjeck,
who was in her first trimester of pregnancy during the alleged kidnapping,
about the abortion she had some time after the incident.  On appeal, Appellant asserts that the
cross-examination was for the purpose of attacking the credibility of Ms. Babjeck=s
account of the extent of her injuries by showing that the fetus was uninjured
by the alleged assault.  In the trial,
Appellant cross-examined Ms. Babjeck in the form of a
bill as to condition of her fetus and to the fact that she did not miscarry
after the alleged incident.  Appellant
offered this testimony to dispute and rebut Ms. Babjeck=s allegation that Appellant and her
companion jumped up and down on her stomach during the alleged kidnapping.  The trial court sustained the State=s objection to the proffered testimony
on the grounds that the offense charged did not require a showing of serious
bodily injury, that there was already evidence of physical injury on the
record, and that the prejudicial impact of the testimony outweighed its
probative value.  The trial court also
sustained the State=s
objection as to Ms. Babjeck not being qualified to
testify as to the likely result of the physical impact on the fetus.

When reviewing the
extent of cross-examination of a witness, the standard of review is abuse of
discretion.  Cantu v. State, 939
S.W.2d 627, 635 (Tex.Crim.App. 1997), cert. denied,
522 U.S. 994, 118 S.Ct. 557, 139 L.Ed.2d 399
(1997).  A party cannot impeach a witness
on a collateral matter.  Ramirez v. State, 802 S.W.2d 674, 675 (Tex.Crim.App.
1990). 








The Sixth
Amendment guarantees the accused in a criminal prosecution the right to be
confronted with the witnesses against her. 
Pointer v. Texas, 380 U.S. 400, 403, 85 S.Ct. 1065, 1067-68, 13 L.Ed.2d 923 (1965).  The Confrontation Clause includes the right
to cross-examine a testifying State=s
witness and to impeach that witness with relevant evidence.  See Carroll v. State, 916 S.W.2d 494, 497 (Tex.Crim.App.
1996).  Evidence is Arelevant@
if it has Aany
tendency to make the existence of any fact that is of consequence to the
determination of the action more probable or less probable than it would be
without the evidence.@  Tex.R.Evid. 401.  

A trial judge
retains wide latitude to impose reasonable limits on cross-examination based
upon concerns that the evidence is only marginally relevant.  See Moody v. State, 827 S.W.2d
875, 891 (Tex.Crim.App.), cert. denied, 506
U.S. 839, 113 S.Ct. 119, 121 L.Ed.2d 75 (1992).  We find no abuse of discretion in the trial
judge=s
decision to exclude the evidence of Ms. Babjeck=s abortion because the proffered
testimony in this case was highly prejudicial and that its impact substantially
outweighed any probative value.  Issue
Three is overruled.  

Extraneous
Offense








In Issue Four,
Appellant asserts that the trial court committed reversible error when it
admitted evidence of an extraneous offense which was not relevant to any issue
in the case and was admitted without notice, despite Appellant=s motion in limine
for notice of the State=s
intent to introduce an extraneous offense.[1]  The State argues, however, that the alleged
extraneous offense was admissible as same transaction contextual evidence which
does not require notice.

The trial court
has wide discretion in deciding whether to admit evidence of extraneous
offenses.  Montgomery v. State,
810 S.W.2d 372, 390-93 (Tex.Crim.App. 1991)(Opin. on reh=g). 
We will not disturb the trial court=s
decision to admit evidence of extraneous offenses absent an abuse of
discretion.  Id.  As long as the trial court=s ruling is within the zone of
reasonable disagreement, an appellate court will not reverse that ruling.  Id.

The Court of
Criminal Appeals has set forth a two-prong test for determining the  admissibility of
background evidence, i.e., background contextual evidence and same transaction
contextual evidence under Texas Rule of Evidence 404(b).[2]  Rogers v. State, 853
S.W.2d 29, 32 (Tex.Crim.App. 1993); Mayes v. State,
816 S.W.2d 79, 86-7 (Tex.Crim.App. 1991).  The first prong requires a determination that
the evidence is relevant under Texas Rule of Evidence 401.  Rogers, 853 S.W.2d
at 32.  Relevant evidence is
evidence which has Aany
tendency to make the existence of any fact that is of consequence to the
determination of the action more probable or less probable than it would be
without the evidence.@  Tex.R.Evid. 401.  Evidence which
is not relevant is not admissible.  Tex.R.Evid. 402.








Next, the
reviewing court must determine whether the background evidence at issue is
admissible as an exception under Rule 404(b). 
Rogers, 853 S.W.2d at 33.  Same transaction contextual evidence has been
defined as evidence of other offenses connected with the offense charged.  Id. 
In Camacho, the Court of Criminal Appeals also defined same
transaction contextual evidence as Aevidence
[which] imparts to the trier of fact information
essential to understanding the context and circumstances of events which,
although legally separate offenses, are blended or interwoven.@ 
Camacho, 864 S.W.2d at 532.  In contrast, background contextual evidence
is Aproof of facts that do not bear
directly on the purely legal issues, but merely fill in the background of the
narrative and give it interest, color, and lifelikeness.@  Mayes, 816 S.W.2d at
87.  Background contextual
evidence is not admissible as one of the Aother
purposes@ for
which evidence may be admitted under 404(b) when it includes an impermissible
character component.  Id.
at 88.  Same transaction
contextual evidence is admissible only to the extent that it is necessary to
the jury=s
understanding of the instant offense.  See
England v. State, 887 S.W.2d 902, 915 (Tex.Crim.App.
1994); Rogers, 853 S.W.2d at 33. 
Thus, A[o]nly if the facts and circumstances of the instant offense
would make little or no sense without also bringing in the same transaction
contextual evidence, should the same transaction
contextual evidence be admitted.@  Rogers, 853 S.W.2d
at 33.  The notice requirements in
Rule 404(b) do not apply to same transaction contextual evidence.  See Brown v.
State, 978 S.W.2d 708, 712 (Tex.App.--Amarillo
1998, pet. ref=d); Hodge
v. State, 940 S.W.2d 316, 319 (Tex.App.--Eastland
1997, pet. ref=d).








Before trial,
Appellant filed a request for the State to provide Rule 404(b) notice of
extraneous or unadjudicated offenses.  In a pretrial hearing, the trial court
granted Appellant=s motion
in limine which requested that the State be precluded
from presenting any evidence of extraneous offenses.  At trial, during direct examination of the
complainant, Ms. Babjeck, the State prosecutor asked
Ms. Babjeck to relate what transpired between she and Appellant during the alleged kidnapping.  The pertinent testimony is as follows:

Q.        Okay. 
When she [Appellant] was-- you said earlier that she accused you of
dealing drugs there, out at that location; it that correct?

 

A.        Yes.

 

Q.        And did she ever get demeaning in that
regard as far as calling you stupid or anything?

 

A.        Well, yes.

 

Q.        How was that?

 

A.        Because at one point I just said AYes, I was doing it.@ 
And she wanted to know how much money I made and I said, AFive hundred dollars.@ 
And then she called me stupid.  That I should have been making a lot more money at it.

 

Q.        Did she elaborate on that?

 

A.        Well, she said that she had been doing
it for years and I don=t
know how to play the game.

 








At this point in
the trial, defense counsel asked to approach the bench.  The court reporter=s
microphone was not working, however, the trial judge later asked defense
counsel to restate his objection for the record.  Defense counsel stated that he objected on
the grounds that the above testimony constituted evidence of an extraneous
offense without notice.  Defense counsel
then asked the trial court to instruct the jury not to consider Ms. Babjeck=s
answer and requested a mistrial.  The
trial judge recounted for the record that the court then asked for the State=s response and that the State had
argued that Ms. Babjeck=s
answer was Ajust a
statement made out at the scene@
and Apart of
her demeanor . . . .@  Based on that representation, the court
overruled the objection.  In the
testimony that followed, Ms. Babjeck affirmed that
she had never seen any indication that the Appellant was dealing drugs.

At trial and on
appeal, the State argues that Ms. Babjeck=s statement is admissible as same
transaction contextual evidence.  First,
we must determine if the proffered evidence was relevant.  See Tex.R.Evid. 401.  Here, Ms. Babjeck
was describing the conversation between the Appellant and herself during the
commission of the offense.  Evidence of
the facts and circumstances of an offense are relevant when they have influence
over a consequential fact, i.e., a fact which has something to do with the
ultimate determination of guilt or innocence in a particular case.  See Mayes, 816
S.W.2d at 84.  Because reasonable persons
may differ when determining whether a particular inference arises from certain
evidence, we will not disturb the trial court=s
relevancy ruling because it falls within the zone of reasonable
disagreement.  See Rogers, 853 S.W.2d at 32; Montgomery, 810 S.W.2d at 391.  

Even if Ms. Babjeck=s
statements were relevant, this evidence was not admissible as same transaction
contextual evidence.  While Ms. Babjeck=s
statements regarding Appellant=s
alleged drug dealing provided context for incident that occurred, this evidence was not necessary in order for the jury to
understand the offense charged.  See
England, 887 S.W.2d at 915.   Further, this evidence was not so
intertwined and indivisible such that one offense could not be understood
without the other.  See Rogers,
853 S.W.2d at 33. 
We cannot conclude that the instant offense would make little or no sense
without also bringing in Ms. Babjeck=s statements as same transaction
contextual evidence.  See Rogers,
853 S.W.2d at 29. 
The trial court erred in admitting this evidence.








Having found
error, we must conduct a harm analysis to determine whether the error calls for
reversal of the judgment.  Even if the
trial court erred in admitting this evidence, we must disregard the error as
long as it is not of constitutional magnitude and did not affect Appellant=s substantial rights.  Tex.R.App.P. 44.2.  A violation
of the evidentiary rules that results in the erroneous admission of evidence is
not constitutional in nature.  See Lam
v. State, 25 S.W.3d 233, 237-38 (Tex.App.--San Antonio 2000, no pet.).  An Appellant=s substantial rights are
affected when the error had a substantial and injurious effect or influence on
the jury=s
verdict.  See King v. State, 953 S.W.2d 266, 271 (Tex.Crim.App.
1997).  If the error had no influence or
only a slight influence, it is harmless. 
Johnson v. State, 967 S.W.2d 410, 417 (Tex.Crim.App. 1998). 
In making this determination we review the entire record, including any
testimony or evidence admitted for the jury=s
consideration, the nature of the evidence supporting the verdict, the character
of the alleged error and how it might be considered in connection with other
evidence in the case.  Morales
v. State, 32 S.W.3d 862, 867 (Tex.Crim.App.
2000).  The only evidence
connecting the Appellant to the alleged extraneous offense was Ms. Babjeck=s
statements, which she later testified were unfounded.  At trial, the jury heard evidence from
Ms. Babjeck and the pickup truck driver witness
as to Appellant=s conduct
during the commission of the offense charged. 
There was also testimony as to Ms. Babjeck=s physical condition from police
officers who arrived at the scene to investigate.  After examining the record in its entirety,
we cannot say that the trial court=s
error in admitting the extraneous offense warrants reversal.  Accordingly, we overrule Issue Four.

Impeachment
Evidence on Prior Inconsistent Statements








In her fifth
issue, Appellant contends that the trial court erred when it denied her the opportunity
to present certain evidence for the purpose of impeaching Ms. Babjeck=s
testimony.  Specifically, Appellant
argues that the trial court erred in refusing to admit the testimony of two
defense witnesses.  Outside the presence
of the jury, Appellant=s
counsel offered the testimony of Charles Smith and Jessica Brown in the form of
bills.  Mr. Smith testified that Ms. Babjeck had offered him cocaine and marijuana on one occasion
at the Estate Lounge bar.  Appellant
argued that Mr. Smith=s
testimony offered permissible impeachment evidence of prior inconsistent
statements by Ms. Babjeck as to never having sold
drugs in the Estate Lounge Bar.  In later
testimony in the form of a bill, Miss Brown testified that she met Ms. Babjeck on the first day Ms. Babjeck
arrived in Odessa, Texas.  Miss Brown was
age fifteen at the time.  According to
Miss Brown, she and Ms. Babjeck rolled a couple of
marijuana joints and then smoked them together on that day.  Appellant offered Miss Brown=s testimony to impeach prior
inconsistent statements by Ms. Babjeck as to when she
started to use drugs in Odessa.  The
trial court refused to admit the proffered testimony of both Mr. Smith and Miss
Brown after determining that this evidence constituted improper collateral
impeachment.








A trial court has
broad discretion in determining the admissibility of evidence and we will not
reverse its ruling absent a clear abuse of discretion.  Allridge
v. State, 850 S.W.2d 471, 492  (Tex.Crim.App.
1991), cert. denied, 510 U.S. 831, 114 S.Ct
101, 126 L.Ed.2d 68 (1993).  As a general
rule, a witness may not be impeached regarding collateral matters.  Ramirez, 802 S.W.2d
at 675.  Texas Rule of Evidence
608(b) provides:  ASpecific
instances of the conduct of a witness, for the purpose of attacking or
supporting the witness=
credibility, other than conviction of crime as provided in Rule 609, may not be
inquired into on cross-examination of the witness nor proved by extrinsic
evidence.@  Tex.R.Evid. 608(b).  There are,
however several recognized exceptions to the rule against collateral attack
which permit impeachment of a witness to show bias, interest, or to correct any
affirmative misrepresentations made by the witness during direct examination.  See Tex.R.Evid. 613(b); Ramirez,
802 S.W.2d at 676.

In the present
case, further inquiry into Ms. Babjeck=s alleged drug activities would have
constituted impermissible impeachment on collateral matters, since Appellant as
the cross-examining party would not be entitled to prove that Ms. Babjeck sold drugs at the Estate Lounge Bar or that Ms. Babjeck began using drugs when she first arrived in Odessa,
rather than several months later.  See
Ramirez, 802 S.W.2d at 675.  Appellant argues that even if this
impeachment evidence was collateral, it is still admissible because Ms. Babjeck gratuitously testified about her drug activities,
which left the jury with a false impression concerning a matter related to her
credibility.  Under this exception to Rule
608(b), a witness may be impeached by evidence contradicting her gratuitous and
voluntary testimony on an irrelevant or collateral matter.  See Hammett v. State, 713 S.W.2d 102, 105 (Tex.Crim.App.
1986).








At trial during
direct-examination, the State questioned Ms. Babjeck
as to what Appellant said to her during the alleged aggravated kidnapping.  Ms. Babjeck
testified that Appellant called her a liar and accused her of being a Adruggie.@  The State prosecutor then asked Ms. Babjeck if Appellant had ever made these accusations before
and Ms. Babjeck replied that Appellant had done so on
one other occasion, which occurred sometime during the first two months of her
arrival in Odessa.  Ms. Babjeck testified that she was not using drugs at that
time.  Ms. Babjeck
also denied ever dealing drugs at the Estate Lounge Bar.  On cross-examination, Ms. Babjeck
restated that she was not using drugs at the time of the earlier
confrontation.  Defense counsel then
asked Ms. Babjeck to clarify the time of that
confrontation and Ms. Babjeck stated that it was
probably a few months after she had arrived in Odessa.  On cross-examination, Ms. Babjeck
also stated that she had not started using cocaine at the time of the earlier
confrontation.  We cannot conclude that
Ms. Babjeck=s
testimony was gratuitous such as to create a false impression with respect to
her use of illegal drugs.  Ms. Babjeck clearly admitted to prior drug usage, leaving only
the exact date on which she started in question.  

On
cross-examination, the defense counsel questioned Ms. Babjeck
extensively on the subject of whether or not she had ever sold drugs in the
Estate Lounge Bar.  The pertinent
testimony is as follows:

Q.        And you know Chuck Smith, the guy that
is sitting out in the hallway?

 

A.        Chuckster,
yeah, I know him. 

 

Q.        Didn=t you offer him cocaine on one
occasion?

 

A.        I don=t
believe that I ever did that.

 

Q.        And when he refused it didn=t
you offer to smoke some marijuana with him?

 

A.        No, I don=t
believe I did that.

 

Q.        You don=t
remember?

 

A.        I don=t
believe offering it to him or---no.

 

Additional pertinent testimony by
Ms. Babjeck included the following:

Q.        Now in response to one of [State
prosecutor=s]
questions about dealing drugs, he asked you if you ever dealt out of the Estate
Lounge and you answered, I never, never dealing [sic] out of the bar. You never
dealt out of that bar? 

 

A.        Correct.

 

Q.        Is that correct?

 

A.        Yes.








Q.        What is your definition of deal?

 

A.        Dealing?

 

Q.        Yeah.

 

A.        That would be selling it to
somebody.  

 

Q.        Do you know that if you just give it
away that you=re just
as guilty as selling it for money?

 

A.        No, I didn=t 

 

Q.        Did you give it away out of the bar or
share it with people at the bar?  

 

A.        I shared it.

 

Q.        Did you share marijuana or cocaine or
both?

 

A.        Both.

 

We cannot agree with Appellant that
Ms. Babjeck=s
testimony created a false impression with respect to selling drugs at the
Estate Lounge Bar.  On cross-examination,
Ms. Babjeck admitted to the alleged drug
activity.  Further testimony by Charles
Smith on this collateral matter would have constituted improper impeachment
evidence.  The trial court did not abuse
its discretion when it excluded the testimony of Charles Smith and Jessica
Brown.  We overrule Issue Five. 

Lesser‑Included
Offenses













In her second
issue, Appellant complains that the trial court erred in denying her request to
instruct the jury on the lesser‑included offenses of kidnapping[3],
unlawful restraint[4],
and aggravated assault.[5]  We apply a traditional two‑prong test
to determine whether Appellant was entitled to a charge on a lesser‑included
offense.  See Bignall
v. State, 887 S.W.2d 21, 23 (Tex.Crim.App. 1994);
Rousseau v. State, 855 S.W.2d 666, 672‑74 (Tex.Crim.App.
1993)(en banc), cert. denied, 510 U.S. 919, 114
S.Ct. 313, 126 L.Ed.2d 260 (1993); Royster v. State, 622 S.W.2d 442, 446 (Tex.Crim.App. 1981)(Opin. on reh=g);
Ramirez v. State, 976 S.W.2d 219, 226‑27 (Tex.App.‑‑El
Paso 1998, pet. ref=d).  First, the lesser‑included offense must
be included within the proof necessary to establish the offense charged.  Bignall, 887 S.W.2d at 23; Ramirez, 976 S.W.2d at 227.  Unlawful restraint and kidnapping are lesser‑included
offenses of aggravated kidnapping.[6]  See Schweinle v. State, 915 S.W.2d 17, 19 (Tex.Crim.App. 1996); Romero v. State, 34 S.W.3d 323,
325 (Tex.App.‑‑San Antonio 2000, pet. ref=d).  The State did not contest that aggravated
assault is a lesser‑included offense of aggravated kidnapping.  We assume, without deciding, that aggravated
assault is a lesser-included offense based on the facts of this case, thus the
first prong of the test is satisfied.








Under the second
prong, some evidence must exist in the record that would permit a jury
rationally to find that if the defendant is guilty, she is guilty only of the
lesser‑included offense.  See
Schweinle, 915 S.W.2d at 18;
Ramirez, 976 S.W.2d at 227.  The
credibility of the evidence and whether it conflicts with other evidence or is controverted may not be considered in determining whether
the lesser‑included offense should be given.  See Gadsen
v. State, 915 S.W.2d 620, 622 (Tex.App.‑‑El
Paso 1996, no pet.).  A defendant is
guilty only of a lesser‑included offense if there is evidence that
affirmatively rebuts or negates an element of the greater offense, or if the
evidence is subject to different interpretations, one of rebuts or negates a
crucial element.  See Ramirez,
976 S.W.2d at 227. 
It is not enough the jury may disbelieve crucial evidence pertaining to
the greater offense.  See Skinner v.
State, 956 S.W.2d 532, 543 (Tex.Crim.App. 1997), cert.
denied, 523 U.S. 1079, 118 S.Ct. 1526, 140
L.Ed.2d 677 (1998).  There must be some
evidence directly germane to the lesser‑included for the jury to consider
before the instruction on the lesser‑included offense is warranted.  See Bignall,
887 S.W.2d at 24; Ramirez, 976 S.W.2d at
227.  A defendant=s
denial of committing any offense does not automatically foreclose an
instruction to the jury on a lesser‑included offense.  See Bignall,
887 S.W.2d at 24.








To determine
whether the trial court erred in failing to give a charge on the lesser‑included
offense, we review all the evidence presented at trial.  Rousseau, 855 S.W.2d
at 673.  The record indicates that
the following pertinent evidence was presented to the jury.  Appellant testified that she had no intent to
harm Ms. Babjeck. 
Appellant admitted that there was a scuffle in which she Abackhanded@
Ms. Babjeck and that she and her companion Aslapped@
Ms. Babjeck around, but that the fight was mostly
verbal, not physical.  Appellant denied
tying up Ms. Babjeck or knowing how she became tied
up.  Appellant also denied kicking or
jumping on Ms. Babjeck during their fight.  Appellant stated that she and the companion
placed a willing Ms. Babjeck into the vehicle and
they all left the ranch property with no special destination in mind.  Police officers who arrived to investigate
the incident testified that Ms. Babjeck was crying,
appeared assaulted, but did not have life-threatening injuries.  The witness who had notified the police and
followed behind the Appellant=s
vehicle testified that Ms. Babjeck looked Aworn out@
and Alike she
had been through a lot,@
but he could not remember if Ms. Babjeck was crying,
dirty, had her hands tied, or whether she had a bloody nose.  Police officers found a gun and twine in
Appellant=s
vehicle, both of which Appellant admitted were her possessions or similar.  A rebuttal witness testified that Appellant
spoke with him on the morning of the incident and had told him that she planned
to take Ms. Babjeck Aout
in the country and beat the shit out of her,@
but he had not taken her seriously.  On
appeal, Appellant points out that none of the medical records from Ms. Babjeck=s
stay at the Midland Memorial Hospital substantiate the serious injuries
allegedly inflicted upon her.  Appellant
also argues that Ms. Babjeck never tried to run away.  In addition, the newspaper article that Ms. Babjeck alleges Appellant showed her while in the vehicle
was never found.

If the defendant
either presents evidence that she committed no offense or presents no evidence,
and there is no evidence otherwise showing she is guilty only of a lesser‑included
offense, then a charge on a lesser‑included offense is not required.  Bignall, 887 S.W.2d at 24, citing Aguilar v. State, 682
S.W.2d 556, 588 (Tex.Crim.App. 1985).  The evidence must establish that if a defendant
is guilty, she is guilty only of the lesser-included offense.  See Lofton v. State, 45 S.W.3d 649, 651 (Tex.Crim.App.
2001).  In the instant case, Appellant=s testimony refuted both the greater
and lesser‑included offenses. 
There was no affirmative evidence that Appellant restrained Ms. Babjeck, but did not abduct her as to require an
instruction on unlawful restraint.  There
was no affirmative evidence that Appellant caused serious bodily injury or
threatened Ms. Babjeck with imminent bodily injury,
but did not restrain or abduct Ms. Babjeck as to
require an instruction on aggravated assault. 
There was also no affirmative evidence presented which indicated that
the alleged kidnapping was not aggravated by an intent to inflict bodily injury
or to terrorize Ms. Babjeck.  We conclude that there was no evidence at
trial from any source to affirmatively rebut or negate an element of the
greater offense which would have permitted a rational jury to find that the
Appellant was guilty of only a lesser‑included offense.  Accordingly, the trial court did not err in
refusing Appellant=s
requested instructions.  We overrule
Issue Two.

Having overruled
all of Appellant=s issues
for review, we affirm the trial court=s


judgment.

 

April
17, 2003

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 5

McClure, J., Chew, J., and Preslar, C.J. (Ret.)

Preslar, C.J. (Ret.)(Sitting by Assignment)

 

(Do Not Publish)











[1]
Appellant also argues on appeal that evidence of the extraneous offense was
more prejudicial than probative under Texas Rules of Evidence 404 and 403.  This objection does not appear on the record.  To preserve error for the purposes of appeal,
a defendant=s trial
objection must comport with the issue raised on appeal.  See Camacho v. State, 864
S.W.2d 524, 533 (Tex.Crim.App. 1993); Tex.R.App.P. 44.2(b).  Appellant
raises a Rule 404(a) objection for the first time on appeal.  If Appellant did not believe the trial judge
engaged in Rule 403 balancing test, she was required to call it to the trial
judge=s
attention at the time and make a sufficient record from which we could properly
review the issue.  Tex.R.App.P. 33.1(a).  





[2]
Texas Rule of Evidence 404(b) governs the admissibility of extraneous
offenses.  Rule 404(b) provides:

 

Evidence of other crimes, wrongs, or acts is
not admissible to prove the character of a person in order to show action in
conformity therewith.  It may, however,
be admissible for other purposes, such as proof of motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident,
provided that upon timely request by the accused in a criminal case, reasonable
notice is given in advance of trial of intent to introduce in the State=s case-in-chief such evidence other
than that arising in the same transaction.





[3]
A person commits the offense of kidnapping if he intentionally or knowingly
abducts another person. Tex.Pen.Code Ann. ' 20.03 (Vernon 2003).  Abduct means to restrain a person with intent
to prevent his liberation by secreting or holding him in a place where he is
not likely to be found, or using or threatening to use deadly force.  Tex.Pen.Code
Ann. ' 20.01(2)(A),(B).





[4]
A person commits the offense of unlawful restraint if he intentionally or
knowingly restrains another person.  Tex.Pen.Code Ann. ' 20.02(a).  Restrain means to restrict a
person=s
movements without consent; so as to interfere substantially with the
person=s
liberty, by moving the person from one place to another or by confining the
person.  Restraint is Awithout consent@
if it is accomplished by force, intimidation, or deception.  Tex.Pen.Code
Ann. ' 20.01(1)(A).





[5]
A person commits an offense of aggravated assault if the person commits assault
as defined in Section 22.01 and the person causes serious bodily injury to
another, including the person=s
spouse, or uses or exhibits a deadly weapon during the commission of the
assault. Tex.Pen.Code Ann. '
22.02(a)(1),(2). 
In pertinent part, Section 22.01 provides:

 

(a)        a person commits an offense if the
person:

 

(1)        intentionally, knowingly, or recklessly
causes bodily injury to another, including the person=s
spouse;

 

(2)        intentionally
or knowingly threatens another with imminent bodily injury, including the
person=s spouse.

 

Tex.Pen.Code Ann. '
22.01(a)(1),(2).





[6]
A person commits the offense of aggravated kidnapping if he intentionally or
knowingly abducts another person with the intent to inflict bodily injury on
him or violate or abuse him sexually or to terrorize him or a third
person.  Tex.Pen.Code Ann. '
20.04(a)(4),(5).