COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

RICKY WAYNE WYCOUGH,                           )

                                                                              )               No.  08-02-00418-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )               
195th District Court

THE STATE OF TEXAS,                                     )

                                                                              )            
of Dallas County, Texas

Appellee.                           )

                                                                              )              
(TC# F-0118732-IN)

                                                                              )

 

 

O
P I N I O N

 

Appellant Ricky
Wayne Wycough appeals his conviction for the offense
of insurance fraud.  See Tex.Pen.Code Ann. '
35.02 (Vernon 2003).  A jury found
Appellant guilty of the offense as charged in the indictment and the trial
court sentenced him to 1 year imprisonment, probated to 3 years= community supervision.  We affirm.








In January 2001,
Detective David Witt of the North Texas Auto Theft Task Force received a call
from the Sachse Police Department about a possible
stolen car.  He and fellow Detective John
Harris went to Sachse and found a limousine parked
behind a vacant mechanic shop.  There was
a for-sale sign on the dashboard. 
Detective Witt called the phone number listed on the sign and a woman, later
identified as Appellant=s
wife, answered.  She denied they had a
car for sale.   When Detective Witt told
her that he was looking at a white limousine that had a for-sale sign with her
phone number, she told him that they had sold the vehicle a year ago.

Detective Witt
observed some damage to the vehicle, in particular, it was rusted out along the
bottom and the rear passenger window on the driver=s
side was broken out.  There were no
obvious signs of theft to the vehicle or any damage to indicate that it was
hot-wired.  It looked like it had been
there for awhile.  The detectives checked
the VIN number and determined that the limousine matched the vehicle listed in
the stolen report that Appellant had filed with the Dallas County Sheriff=s Department and later submitted to his
insurance company.  The limousine was
picked up by 24-Hour Wrecker Service and impounded.

The detectives
then interviewed Jarvis and Jackie Cole, who had owned the mechanic shop.  Mr. Cole told them that Appellant had called
him to get a repair estimate for fixing the limousine and that Appellant
brought the limousine to his shop.  The
detectives also spoke with Rhonda Jones, Mrs. Cole=s
sister and former employee of the shop.  

Detective Witt
then requested the insurance file from the insurance company to see the report
on the theft of the vehicle.  He received
the insurance packet four months later. 
From this material, Detective Witt learned that on February 17, 2000,
Appellant had filed an insurance claim with State Farm Insurance Company,
alleging theft of the limousine.  The
State Farm records showed payment of $6,528 to Appellant on the claim.  Detective Witt testified, to his belief, that
Appellant gave false and misleading statements to State Farm.  After reviewing the file, he and Detective
Harris went and talked to Appellant on May 29, 2001.








During Detective
Witt=s
conversation with Appellant, Appellant informed Detective Witt that he had
heard that the limousine was at the Coles=
business.  But he did not call the police
or the insurance company to let them know because he did not want to get
involved with the Coles.   He also
explained that he had told his wife that if anyone called about the vehicle, to
tell them they had sold it because he thought it would be easier to just tell
them that it was sold.  

Rhonda Jones
testified at trial that she used to work for Jarvis Cole, her brother-in-law,
as a receptionist and secretary at his limousine and mechanic shop.  According to Ms. Jones, Appellant and Mr.
Cole used to be very good friends and knew each other well.  Ms. Jones recalled that while she was working
there, Appellant called the shop several times to speak to Mr. Cole and
they discussed what repairs he wanted done on the limousine because he was
going to sell it.  The limousine had a
for-sale sign on it with Appellant=s
name and phone number when he brought it up to the shop for an estimate.  According to Ms. Jones, the limousine stayed
at the shop for over a year with the for-sale sign displayed.

Pamela Wycough, Appellant=s
wife, testified that she and Appellant owned a limousine service business.  They purchased the limousine in 1992.  Mr. Cole gave her advice on running the
business and occasionally drove for her. 
Their relationship soured in 1996 or 1997, when he used their limousine
for a job and failed to pay them.

The defense called
Robert Lewis, Appellant=s
employer, and Helen Earline Elliot, Appellant=s mother, to testify.  Mr. Lewis was familiar with Appellant=s limousine because Appellant used to
bring it sometimes to Mr. Lewis=
trucking company to do repairs.  Mr.
Lewis recalled that one day, Appellant came in upset
and told him the limousine was gone. 
Appellant then called the police. 
Mr. Lewis could not think of any reason why Appellant would have someone
else make repairs on his vehicle.  Helen Earline Elliott, Appellant=s
mother, also testified that Appellant was a mechanic and she could not imagine
any circumstances where her son would have to take a vehicle to someone else
for repairs.








Appellant
testified in his own defense.  Appellant
last saw the limousine parked outside his employer=s
shop where he had brought it to work on replacing the brakes.  Appellant did not recall seeing any broken
glass on the ground and remembered having locked the vehicle.  Appellant stated he would not have trusted
Jarvis Cole to work on the vehicle because he is not a mechanic.  Appellant also stated that Mr. Cole knew
where he worked because he had come out there a couple of times with Marshall
Biggs.  When he discovered the limousine
was missing, he contacted the Sheriff=s
Department and gave a true statement to the sheriff about the loss.  Appellant called his mother to find out what
type of coverage the vehicle had and then called the insurance agent.  Appellant testified that his statements to
the insurance company were true.  He
denied taking the limousine to Mr. Cole=s
garage and stated that he did not consider Mr. Cole trustworthy enough to have
possession of his limousine.  In 1991 or
1992, he and Mr. Cole became acquaintances but later on, he curtailed their
relationship.  Appellant did not know
where Mr. Cole=s shop
was located and had never been there.

Later that spring,
Appellant had a conversation with Robert Wolfe, a friend, in which there was
mention of the limousine and Appellant told him that he better not be working on it because it was stolen.  A couple of months later, Appellant received
a phone call and based on that conversation, he reached the conclusion that
Jarvis Cole had his limousine.  He did
not call the police at that time because he did not want to get mixed up with
Mr. Cole and figured that Mr. Cole was going to get caught with it.  Appellant thought it would be safer if he
stayed away from him.








After
both sides had rested and closed, but before closing arguments, the State made
a motion to reopen its evidence to call Jarvis Cole as a witness.  Appellant objected on surprise grounds.  The trial court permitted the State to call
Mr. Cole as a witness.  Jarvis Cole
testified that he used to own a shop in Sachse doing
limousine repair and warranty work.  He
also painted cars, did some bodywork, and ran his air-conditioning company at
the location.  At some point while he was
operating his shop, Appellant brought in a limousine.  Appellant had called up Mr. Cole and
asked if he had time to check his car out. 
Mr. Cole told Appellant to drop it off at his shop and that he would
call him in a couple of days and give him an estimate.  Mr. Cole was asked to do an estimate on it
because Appellant wanted to sell it.

A couple days
later, Mr. Cole quoted Appellant a price of $5,200 to $5,500, which they both
agreed was too much money because the car was not worth that much.  Appellant told him that he could not sell it
for that much and that he would get back to him in a couple days to let him
know what he decided.  Eventually, Mr.
Cole contacted Appellant and asked him to come and get it, since he had not
made up his mind and it was taking up space. 
After a month and a half, Mr. Cole jump started the limousine and
moved it out back.  The limousine sat out
there for about a year.  Mr. Cole denied
stealing the limousine and did not know how its window was broken.  Mr. Cole admitted having a criminal history,
which included assault, injury to a child, evading arrest, violation of a
protective order, driving while license suspended, theft by check, unlawfully
carrying a weapon, forgery, and burglary.

The defense called
Don Ingle, a private investigator, as a rebuttal witness.  Mr. Ingle testified that Appellant and his
counsel retained him to investigate this case. 
During the course of that investigation, Mr. Ingle spoke with people
acquainted with Mr. Cole who informed him that Mr. Cole=s
reputation for being peaceful and law-abiding was bad.  They also informed him that Mr. Cole=s reputation for being a truthful,
honest citizen and honest businessman was bad.








DISCUSSION

Exculpatory
Evidence

In Issue One,
Appellant argues the trial court erred by failing to grant his motion to
dismiss due to the State=s
destruction of evidence, the limousine that formed the basis of the insurance
fraud.  Specifically, Appellant asserts
that the limousine was clearly a source of potential exculpatory evidence at
the time the State authorized the insurance company to dispose of it, giving
him no chance to inspect the limousine and gather evidence in his own
defense.  

The State=s duty to preserve evidence is limited
to the evidence that possesses an exculpatory value that was apparent before
the evidence was destroyed.  California
v. Trombetta, 467 U.S. 479, 489, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984); Lee v. State,
893 S.W.2d 80, 86 (Tex.App.--El Paso 1994, no
pet.).  To show a denial of due process
has occurred when evidence was lost, a defendant must show the evidence
was:  (1) material; (2) favorable to the
defense; and (3) destroyed in bad faith by the State.  See Arizona v. Youngblood, 488 U.S.
51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988); Trombetta, 467 U.S. at 488-89, 104 S.Ct. at 2534.  A
showing that evidence might have been favorable does not meet the materiality
standard.  Lee, 893
S.W.2d at 87.  If evidence is
destroyed in good faith and in accord with normal police practice, there is no
due process violation.  See Trombetta, 467 U.S. at 488, 104 S.Ct.
at 2533.








At trial,
Detective Witt testified that the vehicle was released to the insurance company
because the company had paid a claim on it. 
He explained that it was not kept as evidence because the task force had
photographs of the car and wanted to spare the insurance company the storage
fees charged by the impound yards. 
According to Detective Witt this is standard.  The task force itself does not have an area
where they can store such vehicles, but instead impounds vehicles with the
towing service.  Detective Witt testified
that the insurance company requested permission for release of the limousine,
and as the owner, did not need his permission to get rid of it.

Detective Harris
also testified that the task force uses the state-certified storage facility of
24-Hour Wrecker Service and does not have a storage facility of its own.  In most cases, once notified, the insurance
company comes within a matter of days to get the vehicle because storage fees
accumulate daily.  The companies then
will come remove the vehicles, pay the storage fees and towing fee, and take it
to their facilities.  Detective Harris
explained that if a vehicle is reported stolen, they look to see if a claim has
been paid.  If the claim has been paid,
the insurance company in this case, State Farm, owns
the vehicle.  Detective Harris stated
that they have to notify the owner within fifteen days and then determine
whether to have a property hearing or release the vehicle.  They are mandated by their policy to
determine rightful ownership and get the vehicle back to that individual or to
the insurance company without delay.  

Appellant argued
at trial and now on appeal that through inspection of the limousine, he could
have compared the mileage on the odometer, had an expert examine the damage to
determine when it occurred, and could have examined the engine to see if it was
working to refute Detective Witt=s
testimony that the engine needed to be overhauled.  Appellant=s
showing that the lost evidence might have been favorable fails to meet the
materiality standard.  See Lee, 893 S.W.2d at 87. 
Further, Appellant has failed to show the State=s
destruction of the limousine was in bad faith. 
See id. at 86.  Both detectives testified that release of the
limousine to the owner was a standard procedure and there is no evidence to
indicate bad faith on the part of the State in following its policy.  Issue One is overruled. 








Business
Records Exception to Hearsay

In his second
issue, Appellant contends the trial court erred in admitting State=s Exhibit One, State Farm=s insurance claim file, which contained
various documents which Appellant asserts were not admissible under the
business records exception. 
Specifically, Appellant challenges the admissibility of the following
documents contained in the company=s
file:  (1) statements in the activity log
about Detective Witt=s
investigation; (2) the National Insurance Crime Bureau claim referral which
states State Farm suspected fraud; (3) Appellant=s
criminal record; and (4) Appellant=s
prior insurance claims.  

Texas Rules of
Evidence 803(6) permits admission into evidence of records kept in the course
of a regularly conducted business activity as an exception to the hearsay
rule.  See Tex.R.Evid. 803(6), 802.  To be properly admitted under the business
records exception, the proponent must prove the document was made at or near
the time of events recorded, by or whom information transmitted by a person
with knowledge of the events, and made and kept in the course of regularly
conducted activity.  See Tex.R.Evid. 803(6); Philpot
v. State, 897 S.W.2d 848, 851-52 (Tex.App.--Dallas
1995, pet. ref=d).  The trial court=s
admission of evidence is reviewed under an abuse of discretion standard.  Montgomery v. State,
810 S.W.2d 372, 379-80 (Tex.Crim.App. 1990).








At trial,
Appellant objected to the admissibility of certain documents contained in the
State Farm insurance claim file. 
Appellant raised a hearsay objection to pages 17 and 19 of the insurance
company=s
activity log, which he describes as a summary of the State=s case based on conversations with
Detective Witt and an unidentified source. 
Appellant also objected to the admissibility of a claim search of
Appellant=s prior
insurance claims on grounds that it was prejudicial.  The trial court limited the admissibility of
the State Farm insurance claim file as business records, giving the following
limiting instruction to the jury:

Ladies and gentlemen of
the Jury, these are a fairly substantial amount of records from the Complainant
in the case, the insurance company.  They
are complied by various employees, many whom you will
not hear or see.  We don=t know the basis of the preparation of
these documents, or at least it is not known at this time, so no one can vouch
for the veracity of these records.

Now, maybe individual
records will be proved up during the course of the trial, but you--what I=m trying to get across to you is you
are not to take them as being the gospel truth that this happened, as a matter
of historical fact.  They are offered for
the purpose of allowing you to see what records the insurance company has put
together, but the truthfulness of them remains to be proven. 

 

Appellant did not object to this
limiting instruction.  By its limiting
instruction, the trial court informed the jury that at that
time, the State Farm insurance claim file were not being offered for
their truth.[1]  See Tex.R.Evid. 105(a); Jones v. State, 843
S.W.2d 487, 499 (Tex.Crim.App. 1992), cert. denied,
507 U.S. 1035, 113 S.Ct. 1858, 123 L.Ed.2d 479
(1993), overruled in part on different grounds by Maxwell v. State,
48 S.W.3d 196, 200 (Tex.Crim.App. 2001).  The jury is presumed to follow the trial
court=s
instructions in the manner presented.  See
Williams v. State, 937 S.W.2d 479, 490 (Tex.Crim.App.
1996)(jury presumed to follow court=s instructions as given in
charge).  Because State=s Exhibit One was not admitted to prove
the truth of the matter asserted, its contents about Detective Witt=s investigation were not inadmissible
on hearsay grounds and therefore, the trial court did not abuse its discretion
in admitting the company=s
activity log in this regard.  See Tex.R.Evid. 105(a), 801(d).








On appeal,
Appellant also contends the trial court erred in admitting the file=s claim search of Appellant=s prior insurance claims, arguing that
it was inadmissible as extraneous offense evidence under Rule 404(b).  Appellant=s
argument on appeal does not comport with any of his trial objections.  See Fuller v. State, 827 S.W.2d
919, 928 (Tex.Crim.App. 1992); Tex.R.App.P. 33.1(a)(1)(A).  Therefore, error if any,
is waived as to the admissibility of the prior insurance claims document.  We also decline to consider Appellant=s arguments on appeal that the trial
court erred in admitting the National Insurance Crime Bureau claim referral and
Appellant=s
criminal record, which were contained in the insurance company=s file. 
At trial, Appellant did not object to admission of these documents.  An objection must be timely and specific to
preserve error.  See Tex.R.App.P. 33.1(a)(1)(A).  We overrule Issue Two.

Limitation
on Cross-Examination

In his third
issue, Appellant argues the trial court erred in limiting cross-examination of
State=s witness
Rhonda Jones about whether she lied to the State when she told the State that
she had no criminal record during its preparation of the case.  Appellant asserts that this information was a
proper form of cross-examination to establish the witness is prepared to lie to
the State.  

The Sixth
Amendment to the U.S. Constitution guarantees a criminal defendant the right to
confront the witnesses against him.  See
U.S. Const. Amend. VI; Pointer v. State of Texas, 380 U.S. 400, 406, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923 (1965).  The right to cross-examination, however, is
not unlimited and the trial court has broad discretion to limit the scope of 








cross-examination
to prevent Aharassment,
prejudice, confusion of the issues, the witness=
safety, or interrogation that is only marginally relevant.@ 
Delaware v. Van Arsdall,
475 U.S. 673, 678, 106 S.Ct. 1431, 1435, 89 L.Ed.2d
674 (1986).  We review the trial
court=s
decision to exclude evidence under an abuse of discretion standard.  Allridge
v. State, 850 S.W.2d 471, 492 (Tex.Crim.App.
1991), cert. denied, 510 U.S. 831, 114 S.Ct.
101, 126 L.Ed.2d 68 (1993).  

Outside the jury=s presence, Appellant=s counsel informed the trial court of
her intention to offer into evidence prior convictions within the last ten
years against Ms. Jones for impeachment purposes.  The trial court indicated it would permit
impeachment with the prior convictions. 
Appellant=s counsel
also sought to impeach Ms. Jones with statements she made to the State
prosecutor during its investigation in which Ms. Jones indicated she had no
criminal history.

Testifying outside
the jury=s
presence on this matter, Ms. Jones stated she was convicted in the justice
court for bad checks probably fifteen years ago and believed the convictions
were all over ten years old.  Ms. Jones
did not recall any of the bad check convictions during 1998 and 1999, which
were shown to her by Appellant=s
counsel.  Ms. Jones explained that she
did tell the prosecutor that she did not have a criminal record because she
thought it was fifteen years ago and did not think that that was still on her
record.  Defense counsel argued that the
evidence showed she told a lie to the State during the preparation of the case
and was relevant to her credibility.  In
response, the State argued it was an honest mistake and too prejudicial to put
in front of the jury.  The trial court
ruled that it would not permit examination of Ms. Jones concerning her
conversations with the prosecutors.  

At trial, the
State questioned Ms. Jones about the bad checks.  To her knowledge, all those checks had been
take care of and repaid.  On
cross-examination, defense counsel questioned Ms. Jones about the bad checks,
asking her if there could be as many as twenty bad checks that had been brought
against her.  Ms. Jones did not recall
how many there were.  








On appeal,
Appellant asserts the trial court should have permitted him to show the jury
that the witness had lied to the State in the State=s
preparation of its case.  A witness may
be cross-examined on any matter relevant to any issue in the case, including
credibility.  Tex.R.Evid. 611(b).  While Rule 608(a) permits admission of
opinion and reputation evidence to attack or support the credibility of a
witness, subsection (b), prohibits the introduction of specific instances of
conduct for those same purposes.  See
Tex.R.Evid. 608 (a)and
(b).  Despite Appellant=s urging, Ms. Jones= testimony about her statement to the
State prosecutor does not show that she directly lied to the State concerning
her criminal record, but rather shows her mistaken belief about the status of
that record.  

Regardless, this
evidence was not permissible to attack Ms. Jones=
credibility because Rule 608(b) bars impeachment of a witness=s general character for truthfulness
through specific acts of conduct other than evidence of conviction of a
crime.  See Dixon v. State, 2
S.W.3d 263, 271 (Tex.Crim.App. 1998); Tex.R.Evid. 608(b), 609.  Further, the State objected to the evidence
on grounds that it was too prejudicial.  Even
assuming Ms. Jones=
statement was admissible as an exception to Rule 608(b) as Appellant asserts,
the trial court could have reasonably determined that its probative value was
substantially outweighed by the danger of unfair prejudice pursuant to Rule
403.  See Tex.R.Evid. 403. 
Under these circumstances, we conclude the trial court did not abuse its
discretion in concluding this evidence was inadmissible.  Issue Three is overruled.








Through his fourth
issue, Appellant also argues the trial court erred by refusing to permit him to
cross-examine Ms. Jones about whether her motive in giving a statement was to
protect Mr. and Mrs. Cole.  Rule 613(b)
permits impeachment of a witness by proof of circumstances or statements
showing his or her bias or interest.  See
Tex.R.Evid. 613(b).  Generally, a defendant is entitled to pursue
all avenues of cross-examination reasonably calculated to expose motive, bias,
or interest for a witness to falsify his or her testimony, subject to the trial
court=s
discretion to limit the scope of cross-examination.  See Carroll v. State, 916 S.W.2d 494, 497-98 (Tex.Crim.App.
1996).

During
cross-examination of Ms. Jones, Appellant=s
counsel asked Ms. Jones the following question: 
AIsn=t
it true that the reason you gave this statement was to keep Jarvis Cole out of
jail for stealing this car?@  The trial court sustained the State=s objection to this question.  An off-the-record discussion then
occurred.  The following day, Appellant=s counsel requested that the record
reflect her objection that this was relevant evidence to show Ms. Jones= motive to falsify her testimony.

To complain of
excluded evidence, the proponent must make an offer of proof or an informal
bill of exceptions to establish the substance of the evidence for review.  Guidry v. State, 9 S.W.3d 133, 153 (Tex.Crim.App. 1999); see Tex.R.Evid. 103(a)(2)
and (b).  Absent a showing of what the
testimony would have been, or an offer of a statement concerning what the
excluded evidence would show, nothing is presented for review.  Guidry, 9 S.W.3d at
153.  Here, Appellant made no
offer of proof nor a bill of exceptions concerning the specific question asked
of Ms. Jones.  Finding nothing preserved
for review, we overrule Issue Four.

Alternate
Perpetrator Theory

In Issue Five,
Appellant contends the trial court erred in forbidding testimony concerning
extraneous offenses of Jarvis Cole through testimony of three witnesses.  Appellant argues that the testimony
concerning Mr. Cole=s
character and extraneous offenses would have been relevant to support his
alternate perpetrator defensive theory.  








In the offer of
proof, Appellant=s counsel
stated witness Tim Heron would have showed that property had been taken from
Mr. Heron by Mr. Cole who subsequently claimed that there was a civil issue
arising from that property.  Appellant=s counsel stated Mr. Heron took Mr.
Cole to court and Mr. Heron recovered the property showing that Mr. Cole=s claims about that property were
false.  Appellant would have called Tim Ayas to testify that Mr. Cole had him sign a lease for
property that Mr. Cole knew he no longer controlled, then took the money for
the property and never returned it. 
Witness R.W. Greenwood, Jr. would have testified that Mr. Cole had
a reputation in the community for being deceitful and untrustworthy, and has a
bad reputation in the community with regard to being violent.  Appellant argued the witnesses= testimony was relevant and prohibiting
its admission violated his right under the Sixth Amendment to present witnesses
in his defense.  

Alternate
perpetrator evidence may be admitted to establish a defendant=s innocence by showing that
someone else committed the crime.  Wiley v. State, 74 S.W.3d 399, 406 (Tex.Crim.App.
2002).  However, the defendant
still must show that his proffered evidence regarding the alleged alternative
perpetrator is sufficient, on its own or in combination with other evidence in
the record, to show a nexus between the crime charged and the alleged Aalternative perpetrator.@ 
Id.  Courts must be
sensitive to the special problems presented by alternative perpetrator evidence
in Rule 403 evidentiary rulings on its relevancy.  See id.

Here, Appellant
was charged with the offense of insurance fraud.  Section 35.02(a) of the Texas Penal Code
provides:








A person commits an
offense if, with the intent to defraud or deceive an insurer, the person causes
to be prepared or presents to an insurer in support of a claim for payment
under a health or property and casualty insurance policy a statement that the
person knows contains false or misleading information concerning a matter that
is material to the claim, and the matter affects a person=s right to a payment or the amount of
payment to which a person is entitled.

 

Tex.Pen.Code Ann. '
35.02(a)(Vernon Supp. 2004).

 

In
cross-examination, Appellant conceded that he filed the insurance claim with
State Farm, but denied that it contained false or misleading information or
that is was filed with the intent to defraud or deceive.  

Appellant=s proffered witnesses= testimony may have shown that Mr. Cole
has taken property from others and has a bad reputation in the community, but
it provides no nexus on its own, or in combination with other evidence between
the crime charged, insurance fraud, and Mr. Cole as the alleged
alternative perpetrator of that offense. 
See Wiley, 74 S.W.3d at 406.  To the extent that the proffered evidence
would have been even marginally relevant to the defense theory that Mr. Cole
was the Areal
thief,@ the
trial court could have reasonably concluded that its probative value was
substantially outweighed by confusion of the issues or misleading to the
jury.  See Tex.R.Evid. 403. 
We overrule Issue Five.

In Issue Twelve,
Appellant complains of cumulative error on the court=s
restriction on his right to present an alternate perpetrator.  However, proffered evidence during the trial
to show Mr. Cole took the vehicle would not have been sufficient to establish
Appellant=s
alternate perpetrator theory because no nexus was shown between this evidence
and the crime allegedly committed.  See
Wiley, 74 S.W.3d at 406.  Finding no cumulative error, we overrule
Issue Twelve. 

Undisclosed
Witness








Appellant argues
in his sixth issue that the trial court erred in permitting the State to offer
Jarvis Cole=s
testimony after both sides had rested and closed.  At trial prior to final arguments, the State
requested permission to offer Jarvis Cole=s
testimony to contradict Appellant=s
defense theory.  Appellant objected to
allowing Jarvis Cole to testify on surprise grounds.  On appeal, we understand Appellant=s contention to be that the trial court
erred in allowing a State=s
witness to testify who had not been previously disclosed to Appellant.  

Article 36.02 of
the Texas Code of Criminal Procedure provides that the trial court Ashall allow testimony to be introduced
at any time before the argument of a cause is concluded, if it appears that it
is necessary to a due administration of justice.@  Tex.Code Crim.Proc.Ann.
art. 36.02 (Vernon 1981).  The decision to reopen a case is left to the
trial court=s sound
discretion.  See
generally Peek v. State, 106 S.W.3d 72, 75 (Tex.Crim.App.
2003).  A trial court abuses its
discretion if it refuses to reopen a case when the witness is present and ready
to testify, the request to open has been made before the charge was read to the
jury and final arguments were made, the court has some indication of what the
testimony will be and is satisfied that the testimony is material and bears
directly on the main issues in the case, and there is no showing that
introduction of the testimony will impede the trial or interfere with the
orderly administration of justice.  See Sims v. State, 833 S.W.2d 281, 286 (Tex.App.--Houston
[14th Dist.] 1992, pet. ref=d);
Gibson v. State, 789 S.W.2d 421, 423 (Tex.App.--Fort
Worth 1990, pet. ref=d).








We review the
trial court=s
decision to allow a disclosed State=s
witness to testify for an abuse of discretion. 
See Martinez v. State, 867 S.W.2d 30, 39 (Tex.Crim.App.
1993), cert. denied, 512 U.S. 1246, 114 S.Ct.
2765, 129 L.Ed.2d 879 (1994).  In
reviewing the trial court=s
decision, we should consider whether there is a showing of bad faith on the
part of the State and whether the defendant could reasonably anticipate that
the witness would testify, even though the name is not on a witness list.  Nobles v. State, 843
S.W.2d 503, 514-15 (Tex.Crim.App. 1992).  In determining bad faith reviewing courts
have inquired:  (1) whether the defense
shows that the State intended to deceive; (2) whether the State=s notice left the defense adequate time
to prepare; and (3) whether the State freely provided the defense with
information, that is, by maintaining an open files policy, by providing updated
witness lists, or by promptly notifying the defense of new witnesses.  Hardin v. State, 20
S.W.3d 84, 88 (Tex.App.--Texarkana 2000, pet. ref=d).  Further, reviewing courts examining whether
the defense could have anticipated the State=s
witness have considered:  (1) the degree
of surprise to the defendant; (2) the degree of disadvantage inherent in that
surprise; and (3) the degree to which the trial court was able to remedy that
surprise.  Id.
at 88-9.

On appeal,
Appellant asserts that it was not reasonable to anticipate Jarvis Cole would
testify after being repeatedly told by the State that he would not.  Further, Appellant argues the State could
have contacted the defense to make it aware that it intended to call Mr. Cole
as a witness.  In this case, the State
rested and closed its case on the first day of trial.  On the second day of trial, the State
prosecutor represented to the trial court that he had a conversation on the
prior evening with Mr. Cole in which Mr. Cole expressed that he wanted to come
in that day to testify about Appellant bringing in the limousine to his
shop.  The parties were permitted to voir dire Mr. Cole outside the jury=s
presence.  








There is nothing
in the record to indicate the State intended to deceive Appellant by failing to
inform him before the next day of trial or otherwise acted in bad faith.  Further, Appellant could have reasonably
anticipated what Mr. Cole=s
testimony given that Mr. Cole=s
sworn statement was already in evidence. 
Voir dire testimony also indicated his
testimony was cumulative of his statement and Rhonda Jones= testimony.  While the trial court did not grant Appellant=s motion for a continuance, the trial
court was able to remedy Appellant=s
surprise, if any, by having the State provide Mr. Cole=s
criminal history record for cross-examination. 
We conclude the trial court did not abuse its discretion in admitting
Mr. Cole=s
testimony.  Issue Six is overruled.

Improper
Jury Argument

In Issue Seven,
Appellant contends that the State prosecutor intentionally lied to the jury
during closing argument.  In his closing
argument to the jury, the prosecutor stated: 

They got to talk about
how bad a person she is.  She knew that
she had some bad check cases in the past. 
She knew that.  And she knew when she
came in this door that everything bad that she=s
ever done is going to come back and be thrown in her face.  She knew that.  She came in any way, and she told you the
truth, that she saw the Defendant, she saw his wife at the shop drop off the
car.  Did she change her story?  No, she didn=t.

 

Appellant did not object to the
State=s jury
argument at trial, but on appeal argues the prosecutor intentionally mislead
the jury because he knew that Ms. Jones had told him previously that she had no
criminal record and that she had only learned her criminal record was going to
be made evident to the jury after the hearing outside the jury=s presence.  Appellant argues this was fundamental error
so egregious and its harm so great that he was denied a fair and impartial
trial.  








To preserve any
error from improper jury argument, a party must object to the argument and
pursue the objection until the trial court rules adversely.  Mathis v. State, 67 S.W.3d 918, 926-27
(Tex.Crim.App. 2002); Cockrell v. State, 933
S.W.2d 73, 89 (Tex.Crim.App. 1996); see Tex.R.App.P. 33.1.  To do so, a party must object to the
argument, request an instruction for the jury to disregard, and then move for a
mistrial.  Cockrell, 933 S.W.2d at 89. 
Appellant=s
complaint on appeal involves rights implemented on request only, that is, an
objection to the State=s
response to defense counsel=s
attack on Ms. Jones credibility through impeachment evidence.[2]   A defendant=s
right not to be subjected to improper prosecutorial jury argument falls within
the third category of rights addressed in Cockrell, which a defendant
waives if he does not pursue his objection to an adverse ruling.  See id.; Calderon v. State, 950
S.W.2d 121, 137-38 (Tex.App.--El Paso 1997, no
pet.).  We conclude Appellant failed to
preserve error as to the State prosecutor=s
jury argument, therefore Issue Seven is overruled.  

Motion
for Continuance

Through his Issues
Eight and Nine, Appellant contends the trial court erred in not granting his
oral motion for a continuance to bring in witnesses he had released and by not
granting him additional time to prepare closing arguments.  








We review a trial
judge=s denial
of a motion for continuance for an abuse of discretion. Vasquez
v. State, 67 S.W.3d 229, 240 (Tex.Crim.App.
2002).  To establish an abuse of
discretion, the defendant must show that he was actually prejudiced by the
denial of his motion.  Id.  After a trial has begun, a continuance may be
granted Awhen it
is made to appear to the satisfaction of the court that by some unexpected
occurrence since the trial began, which no reasonable diligence could have
anticipated, the applicant is so taken by surprise that a fair trial cannot be
had.@  Tex.Code Crim.Proc.Ann. art. 29.13 (Vernon 1989). 
When a defendant=s
complaint of the denial of a continuance is based on the absence of a witness,
the defendant must make a showing as to what the witness=s
testimony would have been.  See Gentry
v. State, 770 S.W.2d 780, 787 (Tex.Crim.App.
1988).  A defendant may make this showing
by attaching affidavits to the motion for continuance or to a motion for new
trial or by providing testimony at a new trial hearing.  Id. at 787-88.  

At trial,
Appellant requested a continuance to bring back available witnesses he had
released from subpoenas, which he did based on the trial court=s ruling against introduction of
evidence about Jarvis Cole.  Appellant
claimed he had at least three witnesses to bring back to testify.  Appellant sought a continuance to call the
witnesses he had released without the court=s
permission for impeachment purposes.  In
his motion for new trial, Appellant made no showing as to what these absent
witnesses would have testified to.  We
find that Appellant has failed to preserve error, if any, on the trial court=s denial of the motion for
continuance.  Issue Nine is overruled.

Appellant also
argues the trial court erred in not granting him additional time to present his
final argument in light of the State calling Jarvis Cole as a witness, which
denied him his right to a fair trial.  At
trial, Appellant=s counsel
requested more time to modify her closing argument, specifically to argue after
lunch.  In response, the trial judge
stated, ANo, I=m sorry, we can=t.@ 
Appellant=s counsel
replied, AOkay.@








A trial court has
broad discretion in the conduct of a trial proceeding.  See State ex rel.
Rosenthal v. Poe, 98 S.W.3d 194, 199 (Tex.Crim.App.
2003)(orig. proceeding).  Assuming Appellant has not waived error by
his counsel=s reply,
Appellant fails to show that his right to a fair trial was hindered by the
trial court=s
decision not to postpone the trial proceeding. 
Unlike the cases Appellant relies on in his brief, Appellant was not
denied the right to counsel or the opportunity to present a closing
argument.  See e.g., Medley v. State,
47 S.W.3d 17, 25-6 (Tex.App.--Amarillo 2000, pet. ref=d)(trial court
erred in denying appellant=s
request to withdraw his waiver of right to counsel); Dang v. State, 99
S.W.3d 172, 191 (Tex.App.--Houston [14th Dist.] 2002,
pet. granted)(the trial court did not abuse its discretion by limiting
appellant=s closing
argument to twenty minutes); Herring v. New York, 422 U.S. 853, 863, 95 S.Ct. 2550, 2555, 45 L.Ed.2d 593 (1975)(a
trial judge cannot absolutely deny a defendant the opportunity for any closing
summation at all).  Under these circumstances,
we find the trial court did not abuse its discretion in refusing to grant
Appellant additional time to prepare closing argument.  Issue Eight is overruled.

Jury
Charge

In his tenth and
eleventh issues, Appellant contends the trial court committed reversible error
by denying his request for a jury instruction on the definition of reasonable
doubt and for an instruction that Appellant=s
refusal to sign a written statement was no evidence of guilt.  

With respect to
Appellant=s
complaint that the trial court erred in failing to include a definition of
reasonable doubt in the charge, the Texas Court of Criminal Appeals has held
that a trial court is no longer required to instruct a jury on the definition
of reasonable doubt, finding that the Abetter
practice is to give no definition of reasonable doubt at all to the jury.@ 
Paulson v. State, 28 S.W.3d 570, 573 (Tex.Crim.App.
2000), overruled in part by Geesa v.
State, 820 S.W.2d 154, 162 (Tex.Crim.App.
1991).  The trial court in Appellant=s case did not err in refusing
Appellant=s request
of such an instruction.  Issue Ten is
overruled.








Appellant also
requested an instruction that an individual=s
refusal to sign a written statement is no evidence of guilt.  The trial court denied the request, stating
its determination that it was a fact that can be introduced into evidence and
that it did not see it as highly prejudicial. 


At trial,
Detective Witt gave the following testimony concerning his interview with
Appellant about the limousine.  At the
start of their conversation at Appellant=s
business on May 29, 2001, Detective Witt told Appellant they were
investigating the theft of the car and gave Appellant a Miranda warning.  Appellant then signed a Miranda
waiver.  Detective Witt never told
Appellant he was under investigation. 
Detective Witt testified that after they finished talking, he asked
Appellant if he would put in writing what he had just told him.  Appellant declined, stating he did not want
to do that, that he had already talked to his attorney and she advised him not
to talk to us without her being there.

On direct
examination, Appellant testified that he received word that the investigators
wanted to speak to him.  Appellant placed
a phone call to his attorney because he had heard stories about what they were
saying.  His attorney gave him some
suggestions as to what to do if the police came to see him, but he did not
exactly follow them.  Appellant stated
that he voluntarily spoke to the investigators and what he said during the
course of that conversation was the truth. 
Appellant recalled telling them about his conversation with Mr. Wolfe
and that he told his wife what to say about the car.  They asked him to sign a statement, but he
declined.  Appellant explained that he
did not know whether to sign a statement and wanted to talk to his attorney
before actually giving them a written statement.  He told Investigator Witt that he did not
really mind, since he had already talked to him, but wanted to talk with his
attorney first and would get back to him, which he did.








On appeal,
Appellant asserts that just as it is improper to impeach an individual with his
post-arrest silence, it is also improper to impeach an individual with a
post-arrest refusal to sign a written statement, or to use that refusal for any
purpose.  Appellant contends that like
his right to an instruction on his Fifth Amendment right not to testify, he is
also entitled to an instruction that his refusal to give a written statement is
no evidence of guilt.  

The accused has a
right to remain silent when arrested, and the exercise of that right may not be
used against the defendant as a circumstance tending to show guilt.  Sanchez v. State,
707 S.W.2d 575, 578 (Tex.Crim.App. 1986).  However, in this case, Appellant did not
invoke his right to remain silent, but rather spoke voluntarily with the
investigators and then decided not to reduce his oral statements to writing.  While Detective Witt did give Appellant Miranda
warnings prior to his interview, there is no evidence to indicate Appellant was
under arrest at the time.  Even assuming
that Appellant was under arrest, Appellant points to no authorities in support
of his contention that a post-arrest refusal to sign a written statement is an
exercise of his Fifth Amendment rights where he chose not to remain
silent.  Further, the record does not
show that the State attempted to use the fact of his refusal as evidence tending
to show his guilt.  We find that no error
exists in the jury charge concerning the trial court=s
denial of Appellant=s
limiting instruction.  See Hutch v.
State, 922 S.W.2d 166, 170-71 (Tex.Crim.App. 1996)(in reviewing for jury charge error, the reviewing court
must first decide whether error exists). 
Issue Eleven is overruled.

Having overruled
all of Appellant=s issues
for review, we affirm the trial court=s
judgment.

May
20, 2004

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 2

Barajas, C.J., McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
A>Hearsay= is a statement, other than one made by
the declarant while testifying at the trial or
hearing, offered in evidence to prove the truth of the matter asserted.@ 
Tex.R.Evid. 801(d).





[2]
Defense counsel in closing arguments had stated, AThis is Rhonda Jones. 
And then finally, we talked about the fact that we can introduce prior
convictions to show someone=s
not trustworthy.  She admitted to the
conviction of ten--of 20 bad checks.  I
submit to you that Rhonda Jones, based upon the testimony you heard, is not a
credible witness as to what happened that day.@