*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

## MEMORANDUM OPINION

No. 04-07-00746-CR

Jose Angel **RAMIREZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 379th Judicial District Court, Bexar County, Texas
Trial Court No. 2005-CR-5073
Honorable Bert Richardson, Judge Presiding

Opinion by:    Catherine Stone, Justice

Sitting:    Alma L. López, Chief Justice
Catherine Stone, Justice
Sandee Bryan Marion, Justice

Delivered and Filed:    October 15, 2008

AFFIRMED

Jose Angel Ramirez was found guilty of murder by a jury. The jury assessed punishment of life in prison and a $10,000 fine. On appeal, Ramirez contends that the trial court (1) committed reversible error in failing to quash the indictment against him, based upon the destruction of evidence that was potentially exculpatory to him; (2) abused its discretion in refusing his requested jury instruction on the missing evidence, leading to an inappropriate remedy and denial of his rights under the Due Course of Law provision of the Texas Constitution; (3) abused its discretion in failing

to grant his motion for mistrial when a State's witness testified in violation of a limine order; and (4) erroneously commented on the weight of the evidence through an oral instruction to the jury. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

During the early hours of April 16, 1980, firefighters responded to a call reporting a fire at the home of Gladys Jean Ramirez ("Gladys"). After extinguishing the fire, officers discovered Gladys's body on the floor of the room in which the fire was contained. Medical examiners concluded that Gladys, who was found with a knife blade protruding from her neck and a cord wrapped around her neck, was murdered. San Antonio Police Department Detective Anton Michalec investigated the murder, and later that year closed the case as unsolved.

In 2004, Detective George Saidler reopened the investigation of Gladys's murder after receiving a telephone call from Rebecca Tuttle. Tuttle was married to Jose for a brief period subsequent to Gladys's murder. She told the detective that while they were married, she overheard Ramirez talking to his brother about the murder, and that he later told Tuttle he murdered his late wife. In 2005, Ramirez was indicted for Gladys's murder. The case proceeded to trial in 2007, and a jury found Ramirez guilty of murder, sentenced him to life in prison and assessed a $10,000 fine.

### DESTRUCTION OF EVIDENCE AND BAD FAITH REQUIREMENT

Ramirez argues that the trial court committed reversible error in failing to quash the indictment against him, based upon the State's destruction of evidence that was potentially exculpatory to him. In addition, Ramirez argues that the trial court violated his rights under the Due Course of Law provision of the Texas Constitution when it required him to show bad faith on the

part of the police department in the destruction of evidence. We will address each of these arguments in turn.

Ramirez argues that the State failed to properly preserve evidence, that such evidence might have helped him, and that potentially exculpatory evidence was never tested. When a defendant desires to prove the State failed to preserve potentially useful evidence, he has to establish that the evidence was (1) material, (2) favorable to the defense, and (3) destroyed in bad faith by the State. *Salazar v. State*, 185 S.W.3d 90, 92 (Tex. App.–San Antonio 2005, no pet.). Furthermore, "[t]o meet this standard of constitutional materiality, the missing evidence must possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonable available means." *California v. Trombetta*, 467 U.S. 479, 489 (1984) (internal citations omitted). It is not enough to show that the missing or destroyed evidence might have been favorable for the defendant; in order to meet the materiality standard, its exculpatory value must be apparent. *See Lee v. State*, 893 S.W.2d 80, 87 (Tex. App.–El Paso 1994, no pet.); *Hebert v. State*, 836 S.W.2d 252, 254 (Tex. App.–Houston [1st Dist.] 1992, pet. ref'd); *Gamboa v. State*, 774 S.W.2d 111, 112 (Tex. App.–Fort Worth 1989, pet. ref'd.).

Ramirez argues that evidence destroyed by the San Antonio Police Department might have had exculpatory value for him. During the course of investigating Gladys's murder in 1980, police officers collected several pieces of physical evidence. In 1987, several items of evidence were apparently destroyed, including a doorknob with a bloody print, a pack of cigarettes containing a latent fingerprint, a telephone cord containing hair fibers, fingernail clippings, carpet samples, and pieces of Gladys's clothing. Prior to trial in 2007, the trial court heard a pre-trial motion to dismiss

the indictment due to the destruction of evidence. The detective assigned to the case testified that it was not uncommon for the San Antonio Police Department to destroy evidence after a certain amount of time, and although evidence of an unsolved murder is typically not destroyed, there was a chance the evidence in this case might have been recorded under arson instead of homicide, leading to the routine order of destruction.

Ramirez's argument that the doorknob "may have contained blood and a print" or the carpeting "may have had" exculpatory value fails to meet the standards set forth above. *See Lee*, 893 S.W.2d at 87 ("A showing that the evidence might have been favorable does not meet the materiality standard."); *Hebert*, 836 S.W.2d at 254 (same); *Gamboa*, 774 S.W.2d at 112 (same). Ramirez had to prove that the evidence had apparent exculpatory value. Though he speculates that there is a possibility the missing items could have helped him, Ramirez fails to prove access to the doorknob and/or carpeting would have favored him.

Ramirez further argues that the trial court should have interpreted the Due Course of Law provision of the Texas Constitution in light of *Pena v. State*, 226 S.W.3d 634 (Tex. App.–Waco 2007, pet. granted). In *Pena*, the court held that "under the Due Course of Law provision of article I, section 19 [of the Texas Constitution], the State has a duty to preserve material evidence which has apparent exculpatory value, encompassing both exculpatory evidence and evidence that is potentially useful to the defense," regardless of whether bad faith was involved in the loss or destruction. *Pena*, 226 S.W.3d at 651. However, this court and eight of our sister courts[1] have

---

[1] *See, e.g., Martinez v. State*, No. 13-06-665-CR, 2008 WL 2515876, at *9 (Tex. App.–Corpus Christi Jan. 24, 2008, no pet.) (mem. op.) (not designated for publication); *State v. Vasquez*, 230 S.W.3d 744, 750 (Tex. App.–Houston [14th Dist.] 2007, no pet.); *Alvarado v. State*, No. 07-06-0086-CR, 2006 WL 2860973, at *3 (Tex. App.–Amarillo Oct.9, 2006, no pet.) (mem. op.) (not designated for publication); *McGee v. State*, 210 S.W.3d 702, 705 (Tex. App.–Eastland 2006, no pet.); *Salazar*, 185 S.W.3d at 92, *Jackson v. State*, 50 S.W.3d 579, 588-89 (Tex. App.–Fort Worth 2001, pet. ref'd); *Mahaffey v. State*, 937 S.W.2d 51, 53 (Tex. App.–Houston [1st Dist.] 1996, no pet.);

declined to follow the ruling in *Pena*, holding the due course of law provision of the Texas Constitution and the Due Process Clause of the United States Constitution afford defendants the same protections. *Salazar*, 185 S.W.3d at 92-93.

Under both the Texas and United States constitutions, defendants must prove bad faith on the part of the State when there is a claim of erroneous destruction of material, potentially exculpatory evidence. *See Arizona v. Youngblood,* 488 U.S. 51, 58 (1988) (holding that under Due Process Clause of the Fourteenth Amendment, unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law); *Mahaffey v. State*, 937 S.W.2d 51, 53 (Tex. App.–Houston [1st Dist.] 1996, no pet.) (noting that "the accused must show that the State acted in bad faith when it failed to preserve the evidence in order to show a violation of due process or due course of law [under the Texas Constitution]."). Here, Ramirez has failed to prove the State destroyed the evidence in bad faith. There is no evidence that the San Antonio Police Department specifically targeted the evidence in this case for destruction. Detective Saidler testified that the evidence was destroyed in accordance with routine police department procedure. The detective further stated that the records were not singled out to be destroyed and the destruction was through no bad faith of the police department. Even if the destruction of the homicide evidence in this case was negligent, a showing of negligence on the part of the officers is not equivalent to bad faith. *Saldana v. State*, 783 S.W.2d 22, 23 (Tex. App.–Austin 1990, no pet.). Because Ramirez did not prove bad faith on the part of the State, the

---

*State v. Rudd*, 871 S.W.2d 530, 532-33 (Tex. App.–Dallas 1994, no pet.); *Saldana v. State*, 783 S.W.2d 22, 23 (Tex. App.–Austin 1990, no pet.).

trial court did not abuse its discretion in denying the motion to quash the indictment. Ramirez's first issue is overruled.

## JURY INSTRUCTION

In his second issue, Ramirez continues to argue that because material and potentially exculpatory evidence was missing or destroyed, the trial court abused its discretion in refusing his requested jury instruction on the missing evidence, leading to an inappropriate remedy and denial of Ramirez's rights under the Due Course of Law provision of the Texas Constitution. However, as noted above, Ramirez has failed to prove that the missing or destroyed evidence has material, exculpatory value, or that the police department acted in bad faith in the destruction of the evidence. *Salazar*, 185 S.W.3d at 92. Because we do not follow the standard set forth in *Pena*, but require a showing of bad faith in the State's destruction of evidence, the trial court could not have abused its discretion in refusing Ramirez's requested instruction under the circumstances. Ramirez's second issue is overruled.

## VIOLATION OF LIMINE ORDER

Ramirez's third issue contends the trial court abused its discretion in failing to grant his motion for mistrial when a State's witness, Rebecca Tuttle, testified in violation of a limine order. We review a trial court's ruling on a motion for mistrial for abuse of discretion. *Archie v. State,* 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). Thus, we must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Id.* "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Id.* (*quoting Hawkins v. State,* 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)).

In analyzing whether an event is so prejudicial that a mistrial must be declared, we apply the factors established in *Mosley v. State,* 983 S.W.2d 249 (Tex. Crim. App. 1998). *Mosley* requires us to consider: (1) the prejudicial effect; (2) the curative measures taken; and (3) the certainty of conviction absent the prejudicial event. *Id.* at 259.

At trial, Tuttle testified that she married Ramirez in 1981. She testified that two weeks after they were married, she woke up in the middle of the night and overheard a conversation between Ramirez and his brother, Roberto. Tuttle heard Roberto tell Ramirez that Ramirez needed to put "it" behind him and move on with his life; Ramirez responded, "How do you forget beating someone to death when they are saying the act of contrition?" Approximately two weeks later, Tuttle left the defendant, but about a month later began seeing him again after discovering she was pregnant. Tuttle testified that Ramirez later admitted he had killed Gladys, that he pretended he could not speak English when he was in police custody, and that "you could start a fire that would burn a house down using two matches if you knew what you were doing." Ramirez and Tuttle continued to talk until November 1982. This testimony was presented without objection by Ramirez.

Prior to Tuttle's testimony, a bench conference was held in which the trial court issued a limine order instructing the witness not to offer any additional information regarding the incidents that surrounded her relationship with Ramirez, specifically any bad acts or threats. During Tuttle's testimony, the State initiated a bench conference in order to address the prior court ruling, in which it informed the trial court that Tuttle would be testifying that Ramirez told her he would hunt her down and kill her. The trial court again ordered the witness to stay away from commenting on Ramirez's bad acts or threats to Tuttle, and the State agreed to quietly warn Tuttle against it so that the jury would not have to be excused for further instruction. However, when asked, "At some point

during that time, did you learn any information from the defendant about his former wife?", the witness stated, "Yes. I confronted him with what I had heard, and he said to me that he had killed her. He got away with it, and if I ever left again, he would hunt me down." Ramirez immediately objected and moved for mistrial. He argued that the testimony was a direct violation of the limine order, and that the evidence was inadmissible under rules of evidence. The trial court overruled the motion for mistrial, commenting that the question itself did not violate the limine order though the answer did. The court issued a curative instruction to the jury, ordering them to disregard the answer given by Tuttle.

Here, the prejudicial effect of Tuttle's statement was minimal, as a previous witness had already testified that Ramirez had also threatened her life. A curative measure was taken when the trial court gave the instruction to disregard, and Ramirez's conviction did not rest on Tuttle's statement that he threatened her life. In addition, we have previously held that testimony about a prior threat made by a defendant was not of such a character as to suggest the impossibility of withdrawing the impression produced on the minds of the jury. *See, e.g., Garcia v. State*, 246 S.W.3d 121, 134 (Tex. App.–San Antonio 2007, pet. ref'd) (holding there was no abuse of discretion when the trial court denied a motion for mistrial and issued an instruction to disregard after the victim's attorney said she was concerned the appellant might harm her); *Martinez v. State*, 844 S.W.2d 279, 284 (Tex. App.–San Antonio 2007, pet. ref'd) (holding the trial court's instruction cured error when a police officer testified that the appellant had threatened the intended victim). Therefore, Ramirez's third issue is overruled.

**TRIAL COURT'S COMMENT ON WEIGHT OF THE EVIDENCE**

In his final issue, Ramirez contends the trial court erroneously commented on the weight of the evidence when it withdrew a previous ruling and gave a subsequent instruction to the jury. Ramirez challenges an instruction given by the trial court following the testimony of Paula Hale, a friend of Gladys. Prior to Hale's testimony, a hearing was held outside the presence of the jury, in which both sides argued about the admissibility of a statement by Hale that Gladys was afraid of Ramirez. The State argued the statement was admissible as to the victim's "state of mind," and Ramirez objected. The trial court ruled that under *Dorsey v. State*, 117 S.W.3d 332 (Tex. App.–Beaumont 2003, pet. ref'd), "the statement was admissible since a statement that the declarant is afraid or testimony demonstrating that the declarant was afraid when the statement is made is admissible under Texas Rules of Evidence Rule 803(3)." When Hale was asked during trial about what Gladys said to her about Ramirez, Hale replied, "Well, she kept telling me that she was scared and . . . that she was afraid that Jose was going to kill her." Ramirez objected to the portion of the statement "Jose was going to kill her" as inadmissible, and the trial court sustained the objection; again, Ramirez moved for a mistrial.

The trial court excused the jury and heard arguments from both sides regarding the admissibility of the statement under *Dorsey*. The trial court then reversed its original ruling, held the statement was admissible, and allowed the State to re-ask the question in front of the jury. After the jury was brought back into the courtroom, the trial court stated to the jury:

> You can be seated. All right. Ladies and gentlemen, I had previously instructed you to disregard the witness's last answer. There may be some confusion over that. I am just going to withdraw that ruling. I am going to allow the State to ask the same question that was asked. The witness is permitted to give that answer, so it can be considered as evidence and testimony before you.

The State then began questioning Hale, and once the question was asked again, Ramirez renewed his objection to the question presented to the witness on the basis that the question violated rules of evidence.

Ramirez argues that the instruction given by the trial court to the jury was an improper comment on the evidence. The State contends Ramirez waived this issue by failing to object during trial to the instruction given by the trial court to the jury. *See Rabago v. State*, 75 S.W.3d 561, 562 (Tex. App.–San Antonio 2002, pet. ref'd) (noting that as a general rule, trial counsel must object to preserve error, even if it is "incurable" or "constitutional"); *see generally* TEX. R. APP. P. 33.1. However, even if Ramirez had objected we cannot say this instruction was an improper comment on the weight of the evidence.

The Texas Code of Criminal Procedure provides:

> In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.

A trial court's improper comment on the weight of the evidence results in reversible error only when it is either reasonably calculated to benefit the State or to prejudice the defendant's right to a fair and impartial trial. *Aschbacher v. State*, 61 S.W.3d 532, 538-39 (Tex. App.–San Antonio 2001, pet. ref'd) (*citing Sharpe v. State*, 648 S.W.2d 705, 706 (Tex. Crim. App. 1983)). Here, the instruction given by the trial court was not a comment on the weight of the evidence; rather, it was an explanation of the trial court's change in its ruling. Therefore, Ramirez's fourth issue is overruled.

**CONCLUSION**

Ramirez failed to establish that the destroyed evidence had exculpatory value, or that it was destroyed by the State in bad faith. In addition, the trial court did not make an improper comment on the weight of the evidence when it instructed the jury to ignore an earlier ruling and consider evidence put before it. Accordingly, we affirm the judgment of the trial court.

Catherine Stone, Justice

Do Not Publish